UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **NEW ORLEANS HAMBURGER & SEAFOOD COMPANY** | * * * | **CIVIL ACTION NO.:** |
| Plaintiff | * * | **SECTION:** |
| versus | * * | **JUDGE:** |
| **STARR SURPLUS LINES INSURANCE COMPANY** | * * * | |
| Defendant | * * | **MAGISTRATE:** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### COMPLAINT AND REQUEST FOR JURY TRIAL

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, New Orleans Hamburger & Seafood Company who files this Complaint against Defendant, Starr Surplus Lines Insurance Company, and alleges as follows:

### PARTIES

1.

Plaintiff, New Orleans Hamburger & Seafood Company (hereinafter "NOHSC"), is a corporation organized and existing under the laws of the State of Louisiana with a domicile address of 3636 S. I-10 Service Road W., Metairie, Louisiana 70001.

2.

Defendant, Starr Surplus Lines Insurance Company (hereinafter "Starr"), is a foreign insurer that may be served with process through the Secretary of State, State of Louisiana, 3851 Essen Lane, Baton Rouge, Louisiana 70809.

## SUBJECT MATTER AND PERSONAL JURISDICTION

3.

This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332(d) in that it is a class action in which the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one member of the putative class is a citizen of a different state that that of one of the defendants.

4.

This Court has personal jurisdiction over Defendant because at all relevant times it has engaged in substantial business activity in the State of Louisiana. At all relevant times Defendant transacted, solicited, and conducted business in Louisiana through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in Louisiana.

## VENUE

5.

Venue in this case is proper in this Court pursuant to 28 U.S.C. § 1391, because this suit respects real and personal property located exclusively in Orleans and Jefferson Parish, Louisiana and the conduct, acts, and/or omissions upon which this cause of action is based occurred in Orleans and Jefferson Parish, Louisiana, which is completely and entirely within the United States District Court for the Eastern District of Louisiana.

## FACTS

**A.    The COVID-19 Pandemic**

6.

On March 11, 2020 World Health Organization Director General Tedros Adhanom

Ghebreyesus declared the COVID-19 outbreak a pandemic: "WHO has been assessing this outbreak around the clock and we are deeply concerned both by the alarming levels of spread and severity, and by the alarming levels of inaction.  We have therefore made the assessments that COVID-19 can be characterized as a pandemic."

7.

The clinical features of COVID-19 vary from asymptomatic forms to fatal conditions of severe respiratory failure that requires ventilation and support in an intensive care unit (ICU).  Pneumonia has been the most frequent severe manifestation of COVID-19, with symptoms of fever, cough, dyspnea, and bilateral infiltrates on chest imaging.  There are no specific treatments recommended for COVID-19, and no vaccine is currently available; so understanding the complexities of COVID-19 is ongoing.

8.

It has now been discovered by scientists that COVID-19 has several modes of transmission.  Pursuant to a "Situation Report" released by the WHO, the virus can be transmitted through symptomatic transmission, pre-symptomatic transmission, or asymptomatic transmission.  Symptomatic transmission refers to transmission by an individual who is experiencing symptoms associated with the virus who then transfers COVID-19 to another individual.  Data from published studies provide evidence that COVID-19 is primarily transmitted from symptomatic people to other who are in close contact through respiratory droplets, by direct contact with infected persons, or by contact with contaminated objects and surfaces.

9.

The incubation period for COVID-19, which is the time between exposure to the

virus (being infected) and symptom onset, average 5-6 days, however, it can be up to 14 days. During this period, also known as the "pre-symptomatic" period, some infected persons can be contagious. For that reason, transmission from pre-symptomatic case can occur before symptom onset. Pre-symptomatic transmission still requires the virus to be spread through infectious droplets or touching contaminated surfaces.

10.

An individual who does not develop symptoms, an asymptomatic case of COVID-19, can still transmit the virus to another. Though there are few documented cases reported, it does not exclude the possibility that it has or may occur.

11.

Not only is COVID-19 transmitted via human-to-human, but the WHO and scientific studies have confirmed that the virus can live on contaminated objects or surfaces. According to a study by scientists documented in *The New England Journal of Medicine*, COVID-19 was detectable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard, and up to two to three days on plastic and stainless steel.

12.

Another scientific study documented in the *Journal of Hospital Infection* found that human coronaviruses, such as SARS-Co-V and MERS-CoV can remain infectious on inanimate surfaces at room temperature for up to nine days. At a temperature of 30 degrees Celsius or more, the duration of persistence is shorter. Contamination of frequently touched surfaces is, therefore, a potential source of viral transmission. Though this study was not conclusive on COVID-19 itself, scientists are still grappling to

understand this implication.

13.

On March 27, 2020, the Centers for Disease Control and Prevention ("CDC") released a report entitled *Public Health Responses to COVID-19 Outbreaks on Cruise Ships-Worldwide, February-March 2020*. The report detailed that during this time frame, COVID-19 outbreaks associated with three different cruise ship voyages caused over 800 confirmed cases and 10 deaths. Of the individuals tested, a high proportion were found to be asymptomatic, which may explain the high rates on cruise ships. What is interesting about this study though, is that COVID-19 was identified on a variety of surfaces in cabins of both symptomatic and asymptomatic infected passengers up to 17 days after cabins were vacated on the Diamond Princess cruise line, but before disinfection procedures had been conducted. The CDC notes that more studies are required to understand the perpetuation of transmission, but what is clear is the uncertainty around COVID-19 and its implications for the lawful and safe functioning of a variety of businesses.

14.

Without a vaccine to protect against COVID-19, effective control of the outbreak relies on measures designed to reduce human to human and surface to human exposure. Recent information of the CDC's website provides that COVID-19 spreads when people are within six feet of each other or when a person comes in contact with a surface or object that has the virus on it.

15.

The secondary exposure of the surface to humans is particularly acute in places where the public gathers typically to socialize, eat, drink, shop, be entertained, and go for

recreation. This is why the CDC recommends that in viral outbreaks individuals who are infected stay at home and those who are not sick engage in preventative measures such as constant hand washing and avoiding activities that would bring them into close proximity of people with the virus or surfaces where the virus may reside. However, because these recommendations have proven ineffective to minimize the spread of COVID-19, containment efforts have led to civil authorities issuing orders closing non-essential business establishments, including restaurants, bars, hotels, theaters, personal care salons, gyms, and schools, and mandating social distancing among the population. This has caused the cancelation of sporting events, parades, and concerts, the closure of amusement parks, and substantial travel restrictions. In addition, to conserve medical supplies, orders have been issued prohibiting the performance of non-urgent or non-emergency elective procedures and surgeries, forcing the suspension of operations at many medical, surgical, therapeutic, and dental practices.

16.

On March 11, 2020, Governor John Bel Edwards declared that a statewide public health emergency existed in Louisiana.

17.

On March 17, 2020, Governor Edwards entered an Executive Order requiring all restaurants, bars, pubs, and similar establishments to close on-premises food services.

18.

On March 23, 2020, Governor Edwards entered a "Stay At Home" Order restricting public access to non-essential businesses and limiting restaurants to take out only.

B.    **Defendant's All-Risk Commercial Insurance Policy**

19.

Plaintiff purchased from Defendant an insurance policy bearing Policy Number SLSTPTY11264920, naming Plaintiff as the insured. The Policy was purchased to cover Plaintiff's business that owns and operates a chain of restaurants located in Orleans and Jefferson Parish, Louisiana. The Policy provides insurance coverage for the period of February 13, 2020 to February 13, 2021.

20.

Plaintiff did not participate in the drafting or negotiating of the policy with Defendant.

21.

The Policy is an all-risk policy, insofar as it provides coverage for all risks unless the risk is specifically and clearly excluded or limited in the Policy. Under an all-risk policy, the insured bears the burden of proving a loss under the terms of the Policy. The insured does NOT bear the burden of proving the precise cause of the loss. *Morrison Grain Co., Inc. v. Utica Mut. Ins. Co.*, 632 F.2d 424, 430 (5th Cir. 1980). "…[A]ll risk insurance arose for the very purpose of protecting the insured in those cases where difficulties of logical explanation or some mystery surround the loss..." *Id.*

22.

If an insurer denies coverage under an all-risk policy, the insurer bears the burden of proving that the loss was caused by an excluded risk. *Bayle v. Allstate Ins. Co.*, 615 F.3d 350 (5th Cir. 2010). Any ambiguities in the policy must be resolved in favor of coverage for the insured. *McAvey v. Lee*, 260 F.3d 359, 364 (5th Cir. 2001).

23.

The relevant all-risk Policy provides coverage, among other things, for: 1) Business Interruption, 2) Extra Expense, 3) Civil Authority, and 4) Extended Business Income.

**C.     Plaintiff's Loss/Claim Under The All-Risk Insurance Policy**

24.

Plaintiff has suffered and will continue to suffer a direct physical loss of and damage to its property.

25.

Plaintiff's ongoing losses, including, but not limited to, 1) Business Interruption, 2) Extra Expense, 3) Civil Authority, and 4) Extended Business Income.

26.

Plaintiff notified Defendant of its loss and made a claim under the all-risk Policy.

27.

By letters dated March 26, 2020 and April 17, 2020, Defendant issued reservation of rights letters asserting that Plaintiff's loss was likely excluded from coverage under the all-risk Policy.

**CLASS ACTION ALLEGATIONS**

28.

Plaintiff brings this lawsuit pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of themselves and all other persons similarly situated.

29.

The Nationwide Class is defined as:

> All entities who have entered into standard all-risk commercial

> property insurance policies with Starr, that suffered a suspension of business due to the COVID-19 pandemic, and for which Defendant has denied a claim for the losses or have otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses.

The Louisiana Sub-Class is defined as:

> All entities who have entered into standard all-risk commercial property insurance policies with Starr to insure property in Louisiana, that suffered a suspension of business due to the COVID-19 pandemic, and for which Defendant has denied a claim for the losses or have otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses.

Excluded from each class are the Defendants, their employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

30.

Plaintiff reserves the right to modify, expand, or amend the definitions of the proposed classes following the discovery period and before the Court determines whether class certification is appropriate.

31.

Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would prove those elements in individual actions alleging the same claims.

A.   **Numerosity**

32.

This action satisfies the requirements of Fed.R.Civ.P. 23(a)(1). The Class numbers at least in the hundreds and consists of geographically dispersed business entities who are insured for

business interruption losses. Starr sells many insurance policies in the State of Louisiana and most, if not all, other states and therefore joinder of the Class members is impracticable.

33.

The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in Starr's or their agent's books and records. Plaintiff anticipates providing appropriate notice to the certified Class in compliance with Fed.R.Civ.P. 23(c)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed.R.Civ.P. 23(d).

**B.    Typicality**

34.

This action satisfies the requirements of Fed.R.Civ.P. 23(a)(3) because Plaintiff's claims are typical of the claims of each of the Class members, as all Class members were and are similarly affected and their claims arise from the same all-risk commercial property insurance policy provisions entered into with Starr. Each Class member's insurance policy contains the same form providing coverage for business income loss. None of the forms exclude coverage due to a governmental action intended to reduce the effect of the ongoing global pandemic. As a result, a declaratory judgment as to the rights and obligations under Plaintiff's Policy will address the rights and obligations of all Class members.

**C.    Adequacy of Representation**

35.

Plaintiff is committed to prosecuting the action, will fairly and adequately protect the interests of the members of the Class, and has retained counsel competent and experienced in class

action litigation, including litigation relating to insurance policies. Plaintiff has no interests antagonistic to or in conflict with other members of the Class. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

D.     **Commonality**

36.

This action satisfies the requirements of Fed.R.Civ.P. 23(a)(2) because there are questions of law and fact that are common to each of the classes. These common questions predominate over any questions affecting only individual Class members. The questions of law and fact common to the Class include, but are not limited to:

   a.   Whether there is an actual controversy between Plaintiff and Starr as to the rights, duties, responsibilities and obligations of the parties under the business interruption coverage provisions in standard all- risk commercial property insurance policies;

   b.   Whether losses caused by the COVID-19 pandemic are excluded from Plaintiff's and the Class members standard all-risk commercial property insurance policies;

   c.   Whether Plaintiff and the Class members sustained physical loss or damage to covered commercial property as a result of the COVID-19 pandemic;

   d.   Whether Starr breached the all-risk commercial property insurance policies it issued with business interruption coverage; and

   e.   Whether Plaintiff and the Class members suffered damages as a result of the breach by Starr.

E.     **Superiority/Predominance**

37.

This action satisfies the requirements of Fed.R.Civ.P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of the rights of the Class members. The joinder of individual Class members is impracticable because of the vast number of Class members who have entered into the standard all-risk commercial property insurance policies with

11

Defendants.

38.

Because a declaratory judgment as to the rights and obligations under the uniform all-risk commercial property insurance policies will apply to all Class members, most or all Class Members would have no rational economic interest in individually controlling the prosecution of specific actions. The burden imposed on the judicial system by individual litigation, and to Starr, by even a small fraction of the Class members, would be enormous.

39.

In comparison to piecemeal litigation, class action litigation presents far fewer management difficulties, far better conserves the resources of both the judiciary and the parties, and far more effectively protects the rights of each Class member. The benefits to the legitimate interests of the parties, the Court, and the public resulting from class action litigation substantially outweigh the expenses, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation. Class adjudication is superior to other alternatives under Fed.R.Civ.P. 23(b)(3)(D). Class treatment will also avoid the substantial risk of inconsistent factual and legal determinations on the many issues in this lawsuit.

40.

Plaintiff knows of no obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with the authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiff or on its own determination, certify nationwide and statewide classes for claims sharing common legal questions; use the provisions of Rule 23(c)(4) to certify particular claims, issues, or common questions of law or of fact for

class-wide adjudication; certify and adjudicate bellwether class claims; and use Rule 23(c)(5) to divide any Class into subclasses.

## CAUSE OF ACTION – DECLARATORY JUDGMENT
### (Brought on Behalf of the National Class and Louisiana Subclass)

41.

Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this complaint.

42.

Plaintiff brings this cause of action on behalf of the other members of the National Class and Louisiana Subclass.

43.

The Declaratory Judgment Act, 28 U.S.C. § 2201(a) provides that in "a case of actual controversy within its jurisdiction…any court of the United States…may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

44.

An actual controversy has arisen between Plaintiff and Defendant as to whether Defendant can prove that Plaintiff's loss is clearly and specifically excluded from coverage under the relevant all-risk Policy.

45.

Plaintiff prays for a declaration as follows:

1) Defendant has failed to satisfy its burden of proving that the all-risk Policy clearly and specifically excludes coverage for Plaintiff's loss.

2) The all-risk Policy contains ambiguities that must be resolved in favor of coverage for Plaintiff's loss.

3) Plaintiff's loss is covered under the all-risk Policy.

## CAUSE OF ACTION – BREACH OF CONTRACT
### (Brought on Behalf of the National Class and Louisiana Subclass)

46.

Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this complaint.

47.

Plaintiff brings this cause of action on behalf of the other members of the National Class and Louisiana Subclass.

48.

Plaintiff maintains that Defendant's preceding conduct constitutes a breach of the contract as embodied by the aforementioned insurance policy.

49.

As a result of its misconduct, Defendant is liable to Plaintiff for all damages resulting from the breach.

## REQUEST FOR JURY

Plaintiff prays for a jury trial of all matters herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of themselves and all similarly situated individuals, demand judgment against the Defendants as follows:

(1) Declaring this action to be a proper class action maintainable pursuant to Fed.R.Civ.P. 23(a) and Rule 23(b)(3) and declaring Plaintiff and its counsel to be representatives of the Class;

(2) Issuing a Declaratory Judgment declaring the Parties' rights and obligations under the insurance policies;

(3) Awarding Plaintiff and the Class compensatory damages from Starr's breach of the insurance policies in an amount to be determined at trial, together with appropriate prejudgment interest at the maximum rate allowable by law;

(4) Awarding Plaintiff and the Class costs and disbursements and reasonable allowances for the fees of Plaintiff's and the Class's counsel and experts, and reimbursement of expenses; and

(5) Awarding such other and further relief the Court deems just, proper, and equitable.

Respectfully submitted,

s/Joseph Cain
**STEPHEN J. HERMAN (La. Bar No. 23129)**
**BRIAN D. KATZ (La. Bar No. 24137)**
**SOREN E. GISLESON (La. Bar No. 26302)**
**JOSEPH E. "JED" CAIN  (La. Bar No. 29785)**
**JOHN S. CREEVY (La. Bar No. 30879)**
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone:  (504) 581-4892
Facsimile:  (504) 561-6024
sherman@hhklawfirm.com
bkatz@hhklawfirm.com
sgisleson@hhklawfirm.com
jcain@hhklawfirm.com
jcreevy@hhklawfirm.com

-AND-

**ROBERT J. DILBERTO (La. Bar No. 24783)**
Dilberto Law Firm
3636 S. I-10 Service Rd., Suite 210
Metairie, LA 70001
Telephone: (504) 828-1600
Robert@GetRJD.com